OPINIONS OF THE SUPREME COURT OF OHIO
     The full texts of the opinions of the Supreme Court of
Ohio are being transmitted electronically beginning May 27,
1992, pursuant to a pilot project implemented by Chief Justice
Thomas J. Moyer.
     Please call any errors to the attention of the Reporter's
Office of the Supreme Court of Ohio.  Attention:  Walter S.
Kobalka, Reporter, or Deborah J. Barrett, Administrative
Assistant.  Tel.:  (614) 466-4961; in Ohio 1-800-826-9010.
Your comments on this pilot project are also welcome.
     NOTE:  Corrections may be made by the Supreme Court to the
full texts of the opinions after they have been released
electronically to the public.  The reader is therefore advised
to check the bound volumes of Ohio St.3d published by West
Publishing Company for the final versions of these opinions.
The advance sheets to Ohio St.3d will also contain the volume
and page numbers where the opinions will be found in the bound
volumes of the Ohio Official Reports.


The State ex rel. Progressive Sweeping Contractors, Inc. v.
Bureau of Workers' Compensation et al.
[Cite as State ex rel. Progressive Sweeping Contrs., Inc. v.
Ohio Bur. of Workers' Comp. (1994),      Ohio St. 3d      .]
Workers' compensation -- Rates of premium -- Former R.C.
     4123.29 -- New classification created for company
     providing mobile power cleaning to automobile parking
     areas -- Classification is arbitrary and company entitled
     to a rate adjustment, when.
     (No. 92-2622 -- Submitted November 9, 1993 -- Decided
March 2, 1994.)
     In Mandamus.
     Relator, Progressive Sweeping Contractors, Inc. ("PSC"),
provides mobile power cleaning to automobile parking areas.  It
is primarily a litter control service whose operations are done
mostly at night.  Operators remain almost exclusively within
the machine and, according to PSC, "make no repairs or
improvements in [their] work other than creating a clean,
aesthetically pleasing area."
     Until July 1, 1986, PSC's nonclerical operations were
classified for premium purposes under State Insurance Fund
Manual No. 8380-3, which was described on the payroll report as
"Parking Lot Sweeper - No [Repair] or Mech[anical] [Repair]."
PSC's basic rate for these employees was $1.77 per $100
payroll.  On July 1, 1986, 8380-3's manual description was
changed to "Automobile Parking Garages [or] Lots - No
Mechanical [Repair] Incl[uding] Incid[ental] Oper[ations]."
PSC's basic rate stayed essentially the same.
     PSC remained under the latter classification until
December 31, 1987.  On June 10, 1988, PSC was informed that as
of January 1, 1988, it had been reassigned to manual No.
6102-35, "Street cleaning incl[uding] estimating/and all
incidental operation."  This reclassification increased PSC's
basic rate to $6.63 per $100 payroll.
     PSC immediately objected to reclassification.  In his July
5, 1988 letter to respondent Bureau of Workers' Compensation,
PSC president, Michael R. Lucht, detailed the nature of PSC
operations and submitted six alternative classifications for

the bureau's review.  Lucht's suggestions were rejected in an August 19, 1988 internal bureau memorandum in which the bureau's underwriting/auditing section said simply that in "the opinion of the Underwriting/Auditing Section * * * Manual 6102-35 is correct."

At PSC's request, a hearing was held on February 14, 1989 before the Industrial Commission's Adjudicatory Committee.  The committee denied PSC's protest but "recommend[ed that] the 'Manual Committee' review this industry.* * *"  PSC timely appealed.

During the appeal's pendency, legislation transferred the Adjudicatory Committee's functions from the commission to the bureau.  In light of the transfer, PSC was offered, and accepted, a rehearing before the new bureau committee.  At the rehearing, PSC vigorously argued that manual No. 6102-35 did not accurately reflect the hazard of injury to employees of parking lot sweeping operations.  The bureau countered that no other classification more closely approximated PSC's operations.

The committee acknowledged the force of PSC's argument, stating:

"The employer's argument that the risk to which its employees is [sic] exposed is not accurately reflected under manual no. 6102-35 is not without merit."

However, the committee also held that manual No. 6102-35 did most closely approximate PSC's activities.  The commission then upheld the classification, writing:

"Although the employers['s] position is not without merit, the remedy in this case lies properly with the Bureau's Manual Update Committee to the extent that it may achieve equity in the development and assignment of manual classifications."

PSC's request for reconsideration was denied as untimely.

On March 22, 1991, the Manual Update Committee reported its findings to the Workers' Compensation Board.  A comparison of the expected loss rate of the sweeping industry against manual No. 6102 as a whole revealed substantial disparity - - $3.06 for sweepers as opposed to over $7 for the remainder of the classification.  The committee's report also noted:

"[T]here appears to be a substantial difference in loss data between Street and parking lot sweeping and the rest of Manual 6102.  Further, the other categories are of a construction type industry whereas the classification in question is more of a service type industry as found in Manual 8350.  Also, the rates for Manual 6102-35 and Manual 8350 are more compatible as above indicated."

Thus, effective July 1, 1991, PSC was reclassified out of manual No. 6102 and into manual No. 8350-16, "Street or Parking Lot Cleaning."

PSC moved the bureau for retroactive adjustment of the premium rates paid.  The Adjudicatory Committee denied that request, prompting PSC's complaint in mandamus to this court.

Eastman & Smith, John T. Landwehr, Thomas J. Gibney and Kimberly S. Stepleton, for relator.
Lee I. Fisher, Attorney General, Gerald H. Waterman and Janie D. Roberts, Assistant Attorneys General, for respondents.

Per Curiam.  The bureau must "classify occupations or

industries with respect to their degree of hazard[.]" R.C. 4123.29(A)(1); State ex rel. Minutemen, Inc. v. Indus. Comm. (1991), 62 Ohio St.3d 158, 580 N.E.2d 777. At issue is PSC's classification from January 1, 1988 through June 30, 1991.

In examining PSC's occupational classification, we are mindful of two points: (1) absolute precision in occupational classification is often impossible, and (2) judicial deference to respondents' occupational classification is required in all but the most extraordinary circumstances. As to the former, Professor Young explains:

"Industry is used in the sense of occupation. Normally, it is a horizontal rather than a vertical categorization, that is, it is a particular activity rather than an entire process. Welding would be an industry for purposes of classifications as contrasted to the steel industry. Precision in this method of classification would result in an unmanageable number of categories; thus some classifications contain multiple occupations or industries." Young, Workmen's Compensation Law of Ohio (2 Ed. 1971), Section 16.2.

Recognizing this difficulty, we have generally deferred to the commission's expertise in premium matters:

"The experience of men, expert in this department of investigation, whose reports are founded upon experience touching the various hazards of industries and occupations, should be given important consideration[.]" State ex rel. Reaugh Constr. Co. v. Indus. Comm. (1928), 119 Ohio St. 205, 209, 162 N.E. 800, 802.

Judicial intervention in premium matters has traditionally been warranted only where classification has been arbitrary, capricious or discriminatory. Id.; Minutemen, supra. See, generally, 4 Larson, Workmen's Compensation Law (1990), Section 92.67. Given this high threshold, we have been - - and will continue to be - - reluctant to find an abuse of discretion merely because the employer's actual risk does not precisely correspond with the risk classification assigned.

However, where the degree of occupational hazard encountered by a given industry differs from that of the classification as a whole to the extent found by the bureau's own underwriters in this case, we are compelled to find that the classification is indeed arbitrary. PSC is accordingly entitled to a rate adjustment. See State ex rel. Able Temps, Inc. v. Indus. Comm. (1993), 66 Ohio St.3d 22, 607 N.E.2d 450. Former R.C. 4123.29(B)(6) empowered the bureau to "develop classification of occupations or industries that are sufficiently distinct so as not to group employers in classifications that unfairly represent the risks of employment with the employer." 143 Ohio Laws, Part II, 3316. Thus, if the bureau had no classification that substantially reflected hazard, it could have created one. While this result should be the exception rather than the rule, it is warranted here. The bureau should not be permitted under the guise of administrative convenience to shoehorn an employer into a classification which does not remotely reflect the actual risk encountered.

The bureau also argues that PSC's failure to timely seek reconsideration of the Adjudicatory Committee order on rehearing amounts to a failure to pursue an adequate remedy at

law, barring PSC's action.  This is incorrect.  PSC's untimely reconsideration request went to the reclassification question itself, which PSC ultimately won when the bureau indeed reclassified it.  The present action arises from the commission's subsequent denial of PSC's request for rate adjustment over the relevant period.

For the reasons set forth above, a writ of mandamus is hereby granted.

Writ granted.

Moyer, C.J., A.W. Sweeney, Douglas, Wright,  Resnick, F.E. Sweeney and Pfeifer, JJ., concur.